UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
In Admiralty

Case No.:

GREAT LAKES INSURANCE SE,

    Plaintiff,

v.

305 EVENT PRODUCTION LLC,

    Defendant.                            /

## COMPLAINT

Plaintiff, GREAT LAKES INSURANCE SE ("Great Lakes"), hereby sues the Defendant, 305 EVENT PRODUCTION LLC ("305") for a declaratory judgment, and in support thereof states as follows:

### JURISDICTION AND VENUE

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

2. Great Lakes designates this as an admiralty and maritime cause within the meaning of Fed. R. Civ. P. 9(h). This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1333, as it involves a dispute regarding a maritime contract. Great Lakes invokes the provisions of Rule 9(h), 38(e), and 82 of the Federal Rules of Civil Procedure.

3. Venue is proper within the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because the defendant resides in this district, a substantial part of the events or omissions giving rise to the claim occurred in this district, and because a forum-selection clause in the insurance policy at issue in this case designates the Southern District of Florida as the appropriate venue.

4. All conditions precedent to the filing of this action have occurred, been waived, or otherwise complied with.

5. Pursuant to the requirements of 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the Parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

## PARTIES

6. At all times material to this action, Great Lakes is and was a corporation organized and existing under the laws of Germany and is and was a wholly owned subsidiary of Munich Re Group, with an office and principal place of business in Munich, Germany. Plaintiff Great Lakes is and was a citizen of Germany and is registered and authorized to conduct business in London, England.

7. At all times material hereto, 305 is and was a corporation organized under the laws of Florida with its principal place of business in Florida. 305 is and was a citizen of Florida.

## FACTUAL ALLEGATIONS

8. This matter arises out of personal injuries sustained by Jennifer Kuhn aboard 305's 2003 45' Sea Ray, M/Y "SAPPHIRE," hull identification no. SERP9445K203 (the "Vessel"), on or about September 23, 2019.

9. On or about September 23, 2019, Sven Glaeser chartered the Vessel from 305.

10. This charter has been occasionally referred to as a "bareboat charter." However, "bareboat charter" is a term of art, and it is not clear that the charter was a true bareboat charter.

11. As part of the charter, Mr. Glaeser, *inter alia* selected a captain from a list of pre-approved captains provided by 305. A copy of the charter agreement is attached hereto as **Exhibit "A."**

12. Ms. Kuhn is currently prosecuting a personal injury action against 305 in the Circuity Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida. The case is styled *Jennifer Kuhn v. 305 Event Production LLC et al.*, and bears case no. 20-019670-CA-01 (the "State Court Lawsuit"). A copy of the operative complaint in the State Court Lawsuit is attached hereto as **Exhibit "B."**

13. In the State Court Complaint, Ms. Kuhn alleges that while onboard the Vessel as a business invitee, there was a "foreign substance" on the floor, which caused her to trip and fall, thereby injuring herself.

14. Great Lakes issued an insurance policy to 305, policy no. CSRYP/175296, with effective dates of April 30, 2019 to April 30, 2020 (the "Policy"). A copy of the Policy is attached hereto as **Exhibit "C."**

15. The Policy provides, *inter alia*, third-party commercial passenger liability coverage in the amount of $300,000 combined single limit, subject to a $2,500 deductible per claim. The Policy provides, in relevant part, as follows:

> **Coverage B, Extension to include Commercial Passenger Liability**
>
> Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover all sums which you become legally liable to pay and shall pay to fare paying passengers or passengers carried under charter as a result of your ownership or operation of the Scheduled Vessel.
>
> \*   \*   \*
>
> **9. General Conditions & Warranties**
>
> b. This insuring agreement incorporates in full your application for insurance and together with any endorsements issued herein, constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

i. It is warranted that covered persons must at all times comply with all laws and regulations, governing the use and or operation of the Scheduled Vessel. We shall not be deemed to provide cover or shall we be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose us to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

*l*. This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

s. Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

\*        \*        \*

**10. Your Duties In The Event Of A Loss**

2. Within 30 days of a loss giving rise to any claim hereunder give us written notification of the loss and its circumstances, this term is a condition precedent to our liability hereunder.

8. Immediately forward to us any legal papers or notices received in connection with the loss.

\*        \*        \*

**11. Service Of Suit, Choice Of Law And Forum**

**It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

\*        \*        \*        \*        \*

16. 305's agent first attempted to provide Great Lakes with its first notice of the circumstances eventually giving rise to the State Court Lawsuit on October 15, 2019.

17. However, 305's agent sent the notice of the claim to the wrong email address. As a result, Great Lakes was delayed in its ability to investigate Ms. Kuhn's claim.

18. Regardless, during Great Lakes' investigation into the circumstances of the claim, Great Lakes uncovered a series of misrepresentations and omissions made by 305 during the process of procuring insurance for the Vessel. A copy of the Application is attached hereto as **Exhibit "D."**

19. Those misrepresentations and omissions include, but are not limited to:

   a. Failing to disclose a criminal conviction by one of 305's captains, Christopher Miller;

   b. Failing to disclose a criminal conviction by Gerhard De Jager, one of the Vessel's other captains;

   c. Failing to disclose a suspension of Mr. De Jager's driver's license;

   d. Failing to disclose a traffic citation of Mr. De Jager for careless driving in 2017;

   e. Failing to disclose that the Vessel would be bareboat chartered; and

   f. Failing to disclose that the Vessel was not in compliance with relevant United States Coast Guard regulations for legal chartering.

20. Approximately a year after the subject loss, on September 14, 2020, Ms. Kuhn filed the States Court Lawsuit.

21. 305 was served with a summons in that case on November 2, 2020, along with a set of interrogatories and a request for production.

22. Although the Policy requires that an insured "[i]mmediately forward to us any legal papers or notices received in connection with the loss," 305 did not file a responsive pleading in

the State Court Lawsuit, and is believed to have otherwise responded to the written discovery without consulting with Great Lakes or qualified counsel.

## COUNT I – UBERRIMAE FIDEI

23. Great Lakes reincorporates and realleges the allegations of paragraphs 1-22 above as if more fully set forth at length herein.

24. For hundreds of years, policies of marine insurance have been subject to the well-entrenched doctrine of *uberrimae fidei*, the duty of utmost good faith.

25. This duty requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of insurance risk.

26. This duty to disclose extends even to material facts that are not specifically inquired into by the insurer.

27. The Policy, as one of marine insurance, is governed by the principle of *uberrimae fidei*.

28. During the application for the Policy, 305 misrepresented, omitted, and/or concealed a number of material facts, including but not limited to the following:

   a. Failing to disclose a criminal conviction by one of 305's captains, Christopher Miller;

   b. Failing to disclose a criminal conviction by Gerhard De Jager, one of the Vessel's other captains;

   c. Failing to disclose a suspension of Mr. De Jager's driver's license;

   d. Failing to disclose a traffic citation of Mr. De Jager for careless driving in 2017;

   e. Failing to disclose that the Vessel would be bareboat chartered; and

      f.    Failing to disclose that the Vessel was not in compliance with relevant United States Coast Guard regulations for legal chartering.

29. Great Lakes would not have issued the Policy, would not have issued it at the same premium, or would not have issued it on the same terms and/or conditions, had it known any one or any combination of the facts regarding the Vessel, its operators, or 305.

30. Therefore, 305 breached the duty of *uberrimae fidei*, rendering the Policy void from its inception.

WHEREFORE, Great Lakes respectfully requests this Honorable Court to adjudge and declare that 305 misrepresented, concealed, or omitted facts material to the underwriting of the risk, and such misrepresentation, concealment, or omission constituted a breach of 305's duty of utmost good faith said breach of the duty of utmost good faith renders the Policy void *ab initio*, thus, declaring there is no coverage for Ms. Kuhn's claims against 305. Great Lakes further requests that the Court grant any such further relief that the Court deems just and appropriate under the circumstances.

## **COUNT II – BREACH OF GENERAL CONDITION L**

31. Great Lakes reincorporates and realleges the allegations of paragraphs 1-22 above as if more fully set forth at length herein.

32. General Condition *l.* of the Policy provides that "This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision."

33. During the application for the Policy, 305 misrepresented, omitted, and/or concealed a number of material facts, including but not limited to the following:

      a.    Failing to disclose a criminal conviction by one of 305's captains, Christopher Miller;

      b.    Failing to disclose a criminal conviction by Gerhard De Jager, one of the Vessel's other captains;

      c.    Failing to disclose a suspension of Mr. De Jager's driver's license;

      d.    Failing to disclose a traffic citation of Mr. De Jager for careless driving in 2017;

      e.    Failing to disclose that the Vessel would be bareboat chartered; and

      f.    Failing to disclose that the Vessel was not in compliance with relevant United States Coast Guard regulations for legal chartering.

34.    Great Lakes would not have issued the Policy, would not have issued it at the same premium, or would not have issued it on the same terms and/or conditions, had it known any one or any combination of the facts regarding the Vessel, its operators, or 305.

35.    Therefore, pursuant to the terms of the Policy and applicable law, the Policy is void from its inception.

WHEREFORE, Great Lakes respectfully requests this Honorable Court to adjudge and declare that 305 misrepresented, concealed, or omitted facts material to the underwriting of the risk, and such misrepresentation, concealment, or omission constituted a breach of general condition *l.* of the Policy, and that said breach renders the Policy void *ab initio*, thus, declaring there is no coverage for Ms. Kuhn's claims against 305. Great Lakes further requests that the Court grant any such further relief that the Court deems just and appropriate under the circumstances.

## COUNT III – BREACH OF THE COMPLIANCE WARRANTY

36. Great Lakes reincorporates and realleges the allegations of paragraphs 1-22 above as if more fully set forth at length herein.

37. The Policy contained a warranty, which required, in relevant part, that "covered persons must at all times comply with all laws and regulations, governing the use and or operation of the Scheduled Vessel."

38. Pursuant to the Policy's choice-of-law provision, "any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York."

39. Irrespective of the choice of law provision, both federal maritime and New York law strictly enforce warranties in marine insurance policies. Such express warranties must be literally complied with, and noncompliance forbids recovery, regardless of whether the noncompliance was causally related to the loss.

40. At the time of the loss, the Vessel was operating as an illegal charter insofar as it was less than 100 gross tons, was chartered with a captain, had more than 6 fare-paying passengers aboard, and did not possess a certificate of inspection by the United States Coast Guard.

41. Because the Vessel was operating as an illegal charter at the time of the subject loss, i.e., 305 was not "comply[ing] with all laws and regulations, governing the use and or operation of the Scheduled Vessel," 305 breached an express warranty contained in the Policy.

42. As a result of that breach of warranty, there is no coverage under the Policy for Ms. Kuhn's injury.

43. Furthermore, General Condition s. of the Policy provides that "Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception."

44. As such, not only is there no coverage for Ms. Kuhn's claim, but the Policy is also void from its inception.

WHEREFORE, Great Lakes respectfully requests this Honorable Court to adjudge and declare that there is no coverage for Ms. Kuhn's claims against 305 and that the Policy is void from its inception. Great Lakes further requests that the Court grant any such further relief that the Court deems just and appropriate under the circumstances.

## COUNT IV – LATE NOTICE

45. Great Lakes reincorporates and realleges the allegations of paragraphs 1-22 above as if more fully set forth at length herein.

46. Despite Ms. Kuhn's injury taking place on September 23, 2019, Great Lakes first learned of the incident on January 9, 2020.

47. The Policy requires that notice be given to the insurer within 30 days "of a loss giving rise to any claim hereunder."

48. 305 failed to comply with that requirement.

49. Under New York law, which governs the Policy in the absence of entrenched maritime precedent, notice is a condition precedent to coverage, and the failure of an insured to provide notice within a reasonable time will constitute a complete defense to coverage, irrespective of whether the insurer was prejudiced by such late notice.

50. Therefore, because 305 did not provide timely notice of the circumstances regarding the Ms. Kuhn's claim, there is no coverage under the Policy with respect to the State Court Lawsuit, and Great Lakes does not owe 305 either a defense or indemnity with respect to the State Court Lawsuit.

51. Furthermore, despite being served with the complaint in the State Court Lawsuit on November 2, 2020, 305 did not forward a copy of the pleading to Great Lakes until December 29, 2020.

52. By that point, 305 had failed to respond to the complaint, but had nonetheless responded to written discovery requests without notifying Great Lakes or giving Great Lakes an opportunity to appoint counsel to respond to the discovery on 305's behalf.

53. Ultimately, a default was not entered against 305, and 305—through counsel appointed by Great Lakes under a reservation of rights—filed an Answer and Affirmative Defenses on January 14, 2021.

54. Nonetheless, to the extent this failure to properly advise Great Lakes of the pendency of the State Court Lawsuit ultimately prejudices Great Lakes, there is no coverage for Ms. Kuhn's claims, and Great Lakes does not owe 305 either a defense or indemnity with respect to the State Court Lawsuit.

WHEREFORE, Great Lakes respectfully requests this Honorable Court to adjudge and declare that the Policy does not provide coverage for the claims asserted in the State Court Lawsuit, and that Great Lakes has no duty to defend or indemnify 305 with respect to said claims. Great Lakes further requests such other relief as the Court may deem just and appropriate under the circumstances.

Dated: January 21, 2021.

          Respectfully submitted,

          **DAVANT LAW, P.A.**
          *Attorneys for Great Lakes*
          12 Southeast 7th Street, Suite 605
          Fort Lauderdale, FL 33301
          Telephone: (954) 414-0400

By: */s/ Charles S. Davant*
          Charles S. Davant
          Florida Bar No. 15178
          csd@davantlaw.com
          Aaron M. Dmiszewicki
          Florida Bar No. 111455
          amd@davantlaw.com