UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
In Admiralty

Case No.: 21-20251-CIV-COOKE

GREAT LAKES INSURANCE SE,

    Plaintiff,

v.

305 EVENT PRODUCTION LLC,

    Defendant.                              /

**AFFIDAVIT BY B.A. USHER**

1. My name is Beric Anthony Usher and I am over the age of 18 years old. I make this Affidavit based upon personal knowledge.

2. I reside at Woodroyd, Pateley Bridge, Harrogate, North Yorkshire in the United Kingdom. Beginning in 1993, I was employed with the organization that, through various name changes and reincorporation, eventually became known as Concept Special Risks, Ltd. ("Concept"), where I am Managing Director and Senior Underwriter. As Managing Director and Senior Underwriter for Concept Special Risks, I was responsible for the entire department and for all personnel who were involved in the yacht & pleasure boat account which the company wrote on behalf of Great Lakes Insurance SE ("Great Lakes") during the time that Policy No. CSRYP/175296 was issued to 305 Event Production LLC's ("305 Event").

3. At all times relevant hereto, Concept Special Risks Ltd. was the authorized underwriting and claims handling agent for Great Lakes as regards Policy No. CSRYP/175296, which was issued to 305 Event. As the authorized underwriting agent for Great Lakes, Concept Special Risks' role was to receive and to then evaluate applications for the marine insurance coverage that we were authorized to write. Concept Special Risks would then either issue a quote to the surplus lines broker on the basis of the information contained in the application and any

supporting materials, or else Concept Special Risks would refuse to issue a quote and would thereby reject an application for marine insurance coverage.

4. I have been employed in the marine insurance underwriting industry since 1993.

5. Great Lakes' most substantial relationship in the United States is with New York. Great Lakes maintains its agent for service of process in New York, and also maintains its United States Trust Fund account in New York.

6. My duties at Concept Special Risks include making the final determination as to whether and on what terms marine insurance coverage will be agreed to with respect to any particular risk that is submitted by a broker to Concept Special Risks. However, at all times material hereto I have employed several individuals within the Underwriting Department whose role it is to assist me by handling quote requests which are submitted by brokers acting on behalf of assureds, and by ultimately issuing the actual policies where the material facts as disclosed in the application materials make it quite clear that the particular risk being proposed falls squarely within the terms of a formal set of written underwriting and rating guidelines which I have prepared and provided to these individuals.

7. In order to prepare this affidavit, I have reviewed the operative pleadings, the application and underwriting materials.

8. My affidavit is based upon my review of these documents and also upon my personal knowledge of our underwriting practices. It is also based upon my direct personal involvement in and my consequent first-hand knowledge and review of the insurance application documents submitted by or on behalf of 305 Events. Further, my testimony herein is given not only as the actual underwriter involving in writing this particular risk, but also as a reasonable, prudent and intelligent underwriter.

9. On May 21, 2019, Casey Insurance Group submitted a signed and completed application and the survey and requested that the Policy be bound. This version of the application

also included the three named operators without reference to any criminal convictions, violations, or suspensions. This final version of the application also rejected any bareboat chartering for the Vessel.

10. Great Lakes and Concept approved underwriting the risk to the Vessel presented by 305 Event's application based upon the representations made by their agent and the application materials.

11. Chartering activities require higher premium for several reasons, including but not limited to:

- Greater personal injury liability for crew and guests;
- Increased risk associated with the greater frequency of use of the boat (more wear and tear / likelihood of something breaking); and
- Change in risk associated with the chartering activities.

12. Normal maritime practice would expect the owner/insurance applicant to provide material information about the vessel including any information they had the intended use of the vessel.

13. However, 305 Event never disclosed that it would operate the vessel without a Certificate of Inspection.

14. Such information is material and would result in the Policy never being issued by Great Lakes.

15. Additionally, if Great lakes had known that the Vessel was going to be offered to charter with 5 undisclosed operators, Great Lakes would never have offered coverage or issued the Policy.

16. Moreover, during the investigation of the claim, it was identified that 2 of the 3 named operators identified with the Vessel and included it the application had criminal convictions, moving violations and/or suspensions.

17. The application specifically asks for each operator (and in the General Information section) whether any of the named operators have been convicted of a criminal offense or pleaded no contest to a criminal action. *See* Exhibit "B" to this Affidavit, a true and correct copy of the executed application submitted to Great Lakes and Concept Special Risks to underwrite the Policy.

18. In this instance, the application indicated "no" in the general information section and for each named operator. *See* Exhibit "B."

19. Additionally, the application further contained a question for each named operator to list Violations/Suspensions (including Auto) in the last 5 years. Each operator indicated no or none. *See* Exhibit "B."

20. The existence of these criminal convictions, moving violations and/or suspensions with respect to the identified named operators would result in additional inquiries to learn the circumstances of each.

21. If satisfied with the responses, the result would be an increase in premium based upon various factors including the time since the occurrence and the type and severity of the infraction.

22. In some instances, again depending upon the circumstances of the violations, Great Lakes and Concept may elect to exclude that proposed operator for coverage or not accept coverage at all.

23. As such, this information is critical to Great Lakes and Concept Special Risks and any reasonable and intelligent underwriter.

24. When any quotation request or application comes into our facility for review and underwriting, we have no ability to judge the nature of the risk being presented by any means other than the information disclosed therein. Accordingly, we rely completely on the compliance by the Assureds and brokers acting on their behalf with the obligations imposed by the principles of *uberrimae fidei* or "utmost good faith.".

FURTHER AFFIANT SAYETH NAUGHT.

Pursuant to Florida Statue §92.525(1)(b)(2) and Federal Statue 28 U.S.C. § 1746. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June _14th___, 2022.

_____
B.A. Usher
Concept Special Risks, Ltd.